UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ALI IMAM SHAH** | : | **DOCKET NO. 16-cv-529** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **BLUE WAKE SHIPPING** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Remand [doc. 6] filed by plaintiff Ali Imam Shah ("Shah"). The motion was filed in response to the Notice of Removal [doc. 1] filed by defendant Blue Wake Shipping ("Blue Wake"). For the reasons stated below, **IT IS RECOMMENDED** that the motion be **DENIED.**

**I.**
**BACKGROUND**

On October 13, 2015, Shah entered into a Seafarer's Employment Contract to serve as an Ordinary Seaman aboard the M/T Nord Intelligence, a vessel that sails under the flag of Singapore. Doc. 11, att. 5. The contract lists EPIC Ship Management ("EPIC"), an agent acting on behalf of the ship owner, Blue Wake, as Shah's employer.[1] *Id.* Shah and an employee of Doehle Danautic India Pvt., Ltd ("Doehle"), the recruitment and placement agent for EPIC, signed the contract. *Id.*; *see* doc. 11, att. 3 (recruiting agreement between Doehle and EPIC). The employment contract is

---

[1] The relationship between EPIC and Blue Wake is provided by the employment contract, which lists EPIC "as agent[] only on behalf of vessel's owners," and a declaration by Blue Wake attesting that EPIC is the entity responsible for operation of the Nord Intelligence. Doc. 11, att. 5; doc. 11, att. 2.

a one-page document that delineates Shah's terms of employment and contains four written conditions:

> (1) The current [Collective Bargaining Agreement ("CBA")] shall be considered incorporated into and to form part of the contract.
>
> (2) The Ships Articles [*sic*] shall be deemed for a purposes to include the terms of this contract (including the applicable CBA) and it shall be the duty of the Company to ensure that the ship's Articles reflect these terms. These terms shall take precedence.
>
> (3) The Seafarer has read, understood and agreed to the terms, conditions and benefits of employment as identified in the Collective Agreement and enter [*sic*] into this contract freely.
>
> (4) The Seafarer confirms that neither the Company nor its Manning Agents have charged any fees (directly or indirectly in whole or in part) to the seafarer for his/hers recruitment or placement or for providing employment.

*Id.*

The Collective Bargaining Agreement ("CBA") referenced in the employment contract is an agreement between EPIC and the Singapore Organisation of Seamen. Doc. 1, att. 3. The CBA contains the following arbitration clause:

> **6. REFEREE**
>
> In the event of any dispute or disputes arising out of the operation of this Agreement, the dispute or disputes shall be referred by either party to the President of the Industrial Arbitration Court who may select a referee appointed under section 43 of the Industrial Relations Act to hear and determine such dispute or disputes.

*Id.* at 4. The scope of the CBA is defined in the same section as covering

> all categories of seamen who are members of the Union as listed in Appendix I or Appendix IA to this Agreement, who are engaged in accordance with the prevailing legislation governing maritime employment in Singapore for work on such ships of the Company as are listed in Appendix II to this Agreement or as are subsequently included in an exchange of letters between the Company and the Union . . . .

Doc. 1, att. 3, p. 2. Appendix II identifies the Nord Intelligence as being a ship whose crewmen are subject to the CBA. *Id.* at 22. Appendix IV provides compensation rates for seamen injured at sea. Doc. 1, att. 3, pp. 25–27.

Shah contends that on October 30, 2015, he lost his footing while laboring on the ship. Doc. 1, att. 1, p. 1. From this fall he allegedly suffered "severe and debilitating injuries." *Id.* He filed a Petition for Damages in the 14th Judicial District Court, Calcasieu Parish, Louisiana, under the Jones Act, 46 U.S.C. § 30104, and United States general maritime law, asserting theories of negligence and unseaworthiness. *Id*. at 1–5. Blue Wake removed the case to this court, alleging federal question jurisdiction, 28 U.S.C. § 1331, under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. § 201 *et seq.*; and admiralty jurisdiction under 28 U.S.C. § 1333. Doc. 1, pp. 3–4.

## II.
### LAW AND ANALYSIS

Shah now moves to remand arguing that, because there is no agreement in writing to arbitrate between Shah and Blue Wake, the Convention is inapplicable. Doc. 6, att. 1, p. 2. He also alleges that his claims arise under the Jones Act and cannot be removed from state court under that act's savings to suitors clause because admiralty jurisdiction alone is insufficient to establish a basis for removal. *Id.* Blue Wake opposes remand, asserting that an arbitration clause qualifying under the Convention is located in the employment documents. Therefore it contends that this court has jurisdiction pursuant to 28 U.S.C. § 1331 and removal was proper under the Convention.[2] Doc. 11.

---

[2] Blue Wake does not address Shah's argument denying that this court had original admiralty jurisdiction. Because the Fifth Circuit requires that "arguments . . . be briefed to be preserved," we assume that Blue Wake waives its argument for admiralty jurisdiction. *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (internal quotation omitted). Therefore we will only address the argument for jurisdiction under the Convention and § 1331.

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "falling under" the Convention referenced *supra* "shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203.

"An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, **falls under** the Convention." 9 U.S.C. § 202 (emphasis added); *see Acosta v. Master Maintenance and Const., Inc.*, 452 F.3d 373, 375–76 (5th Cir. 2006). On removal from state court, the Convention provides:

> Where the subject matter of an action or proceeding pending in a State court **relates to** an arbitration agreement or award falling under the convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205 (emphasis added). Therefore, for removal to be proper, the arbitration agreement must be one that "falls under" the Convention and the suit must "relate[] to" the arbitration agreement. Shah argues that the arbitration agreement in the CBA does not meet either requirement.

  A. *Falling Under*

In determining whether an arbitration clause falls under the convention, the Fifth Circuit exercises "a very limited inquiry" using a four-part test. *Sedco v. PEMEX*, 767 F.2d 1140, 1144–45 (5th Cir. 1985). The test requires that (1) there is a broad agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate arises out of a commercial legal relationship; and (4) a party to the

agreement is not an American citizen. *Id.* (citing *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 185–86 (1st Cir. 1982)).

Shah argues that there is no agreement to arbitrate in the shipping articles[3] or his employment contract, and that the arbitration agreement in the CBA thus violates part one of the test. Therefore our inquiry will not address the latter three factors, as there is no dispute over their fulfillment.

The Convention's definition of such agreements extends to both an arbitration clause in a contract as well as an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams. *Sphere Drake Ins., PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669 (5th Cir. 1994). Agreements incorporating the arbitration clauses of other agreements generally satisfy the *in writing* requirement. *Tuca v. Ocean Freighters, Ltd.*, 2006 WL 901840, *4 n. 3 (E.D. La. Apr. 4, 2006) (unpublished). Furthermore, when the scope of an arbitration agreement is at issue, the Fifth Circuit holds that "the court should construe the clause in favor of arbitration." *Sedco*, 767 F.2d at 1145.

The clause at issue here is plainly an agreement to arbitrate. As Shah notes, the scope section of the CBA purports to apply only to members of the Singapore Organisation of Seamen. *See* doc. 1, att. 3, pp. 1–2. However, the CBA is explicitly incorporated into the employment contract signed by Shah, even in the absence of the Fifth Circuit's guidance on the liberal construction of

---

[3] As stated in the terms in the employment contract, it is Blue Wake's duty to ensure that the shipping articles reflect the terms of the employment contract and the CBA. Doc. 1, att. 2. Shah contends that, because there is not an arbitration agreement in the shipping articles, he is not required to arbitrate the dispute with Blue Wake. Doc. 6, att. 1, pp. 5–7. There is no an arbitration agreement in the shipping articles, nor is there any mentioning of such an agreement in the articles to reflect that they are to be incorporated by reference. *See* doc. 6, att. 2.

However, the laws regarding shipping articles do not apply to foreign flagged vessels. *See* 46 U.S.C. §§ 10301(c), 10302. Therefore the employment contract term requiring incorporation of other documents into the Shipping Articles is a self-imposed obligation by the defendant and not one required by law. Thus only Title 6 of the CBA and its incorporation into the employment contract will be reviewed for our determination of whether there is an arbitration agreement governed by the Convention.

arbitration clauses.[4] *See* doc. 1, att. 2. There the parties acknowledged that "[t]he current CBA [was] incorporated into and . . . form[ed]" part of the employment contract, and Shah attested that he had read and understood the "terms, conditions, and benefits of employment as identified in the [CBA] . . . ." *Id.* Accordingly, the arbitration clause at issue falls under the Convention.

### B.  Relating To

Fifth Circuit courts have interpreted the term "relates to" broadly in determining if removal of a case is justified under the Convention based on an arbitration agreement. *Acosta*, 452 F.3d at 377. "[W]henever an arbitration agreement falling under the Convention could **conceivably** affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Beiser*, 284 F.3d 665, 669 (5th Cir. 2002) (emphasis in original).

The terms of the CBA, including the arbitration agreement, apply to Shah by their incorporation into his employment contract, as explained *supra*. The arbitration agreement refers "any dispute arising out of the operation of this Agreement" to arbitration. Doc. 1, att. 3, p. 4. Thus the arbitration agreement relates to the instant case.

Because the arbitration agreement in the CBA relates to the suit and falls under the Convention, removal to this court was proper pursuant to 9 U.S.C. § 205.

---

[4] Shah relies on the Eastern District of Louisiana's analysis in *Pan Quan Ru v. Sepat Shipping PTE Ltd.* ("Sepat"), No. 2:08-cv-5025, doc. 32 (E.D. La. Jul. 10, 2009) (unpublished) (Order & Reasons provided as an exhibit here at Doc. 6, att. 3), to support his argument that the arbitration agreement was meant only to apply to disputes between EPIC and the Singapore Organisation of Seamen. There the employment agreement contained a term stating that the employer's offer to the seamen was "governed by the terms and conditions of service" as stated in the applicable CBA. *Id.* at 8. The CBA contained seven parts and the court found that six out of the seven parts pertained to the "terms and conditions governing the employment of seamen" as mentioned in the terms of the employment contract. *Id.* at 10. The arbitration clause was contained in the seventh, which the court ruled was a term of the relationship between the union and employer rather than the individual seaman and the employer. *Id.*

The CBA referenced in Shah's employment contract is also composed of several parts. Doc. 1, att. 3. However, as Blue Wake notes, the terms lack enough specificity to invite the assumption that only a portion of the CBA is to be incorporated into the employment contract. Unlike the employment contract in *Sepat*, which specified the parts of the CBA to be incorporated, the terms of Shah's employment contract are phrased broadly to incorporate the entire CBA. *See* doc. 1, att. 2 ("The current CBA shall be considered to be incorporated into and to form part of the contract.").

### III.
#### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** the Motion to Remand [doc. 6] be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 30th day of August, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE